**MIDDLETOWN (City), Appellee v. BAKER, Appellant.**

Ohio Appeals, First District, Butler County.

No. 861.   Decided June 24, 1943.

Fred J. Schatzmann, Middletown, for appellee.
Victor F. Schmidt, Middletown, for appellant.

**OPINION**

By ROSS, P. J.

This is an appeal on questions of law from a judgment of conviction of the Municipal Court of the city of Middletown, Butler county, Ohio.

The defendant was charged with the violation of certain ordinances of the city of Middletown, the pertinent parts of which are as follows:

"Section 1. The terms hawkers, peddlers, and hucksters shall be considered synonymous when used in this ordinance and shall be deemed to designate a person engaged in the business of making retail sales of provisions, goods, wares or merchandise of any description, upon the streets, alleys or other public places in the city of Middletown, whether by personal solicitations or by supplying a purchaser with the same without solicitation. A hawker, peddler or huckster shall be deemed to be such within the meaning of this ordinance when he has no established place of business and carries his goods with him for the purpose of selling the same.

"Section 2. It shall be unlawful for any person, as a hawker, peddler or huckster, to sell or offer to sell, whether through himself or others, upon any of the streets, alleys or other public places within the city of Middletown, any fruits, vegetables, meat, poultry, fish, ice, coal, provisions, goods, wares or merchandise of any description until he first shall have obtained from the Clerk of the City Commission a license so to do; provided however that this ordinance shall not apply to, or require the owner of any product of his own raising, or the manufacture of any article manufactured by him, to obtain a license to vend and sell in any way, by himself or his agent, any such article or product.

"Section 1. That section 5 of Ordinance No. 1589, entitled, 'To regulate and license hawkers, peddlers and hucksters and to repeal said Ordinance named therein' be amended to read as follows:

"(Section 5.) Every hawker, peddler or huckster who carries on the business prescribed in Sections 1 and 2 hereof shall pay a license fee of one dollar ($1.00); provided however, that no fee shall

be required of an applicant for a license who already holds a license pursuant to the provisions of Section 6351 of the General Code of the State of Ohio.

"Section 13. Any person violating any of the provisions of this ordinance or making a false statement in any of the applications herein provided for, or selling by false weight or false measure or permitting any license or badge issued to him or her to be used in a manner or by a person not authorized by this ordinance shall, upon conviction thereof, be fined not less than Five Dollars ($5.00) nor more than Fifty Dollars ($50.00)."

The evidence shows that the defendant is an avowed member of a sect known as "Jehovah's Witnesses" and claims to be a "representative and minister of Jehovah God and operates under authority of the Watchtower Bible and Tract Society" which, he asserts, is a charitable corporation organized under the laws of the state of Pennsylvania. He also asserts that "the sole purpose of the corporation is to preach the gospel of God's Kingdom by printing and distributing literature containing printed sermons on bible subjects relating to present day world events."

On the 10th of February, 1943 the defendant stationed himself on the sidewalk at the corner of two streets in the city of Middletown and there offered for sale a certain magazine, of the same character as the literature just mentioned. He admits that in some cases the literature was sold for a price exceeding that at which it was purchased. Upon being accosted and questioned by a police officer of the city of Middletown, it developed that he was selling the magazines without having applied for or been issued a permit as provided for in the ordinance quoted.

The defendant was arrested, tried, convicted of a violation of the ordinance and sentenced to pay a fine from which judgment he appeals on questions of law to this court.

The defendant claims he was a duly ordained minister "preaching the gospel as contained in the Bible." He claims that the ordinances by the language used in them do not specifically make the acts proved against the defendant an offense at law, and that he has therefore committed no criminal act which can furnish a predicate for the prosecution and sentence herein involved.

He further claims that although the ordinance is constitutional, that if so, applied to the acts of the defendant, it would cause an invasion of his rights guaranteed under the Constitution of the State of Ohio and of the United States, in that it would restrict his rights to freedom of the press, freedom of speech, and freedom of religion, all of which are in a "preferred position".

The city claims the ordinance is broad enough in its terms to cover the acts of defendant and that the fee required by the ordinance being merely nominal, to-wit: $1.00 per year, imposed merely as a regulatory measure, without discrimination, no discretion being left in the authority issuing the permit, and the size of

the fee being fixed and calculated in an amount not larger than is necessary to defray expenses directly incident to and connected with its issuance and the protection of those on the streets and at home against the abuse of solicitors, it does not violate either the state or federal Constitutions in its provisions or in its application to the acts of the defendant.

It is therefore first necessary to determine whether or not the affidavit upon which the prosecution is based contains a charge of an offense included within the provisions of the ordinances in question. The affidavit in substance sets forth the facts hereinbefore stated:

"one Carey William Baker unlawfully did then and there sell and/or offer for sale upon the public streets of said City, to-wit, Central Avenue, certain goods, wares and/or merchandise. to-wit, magazines, without first having obtained from the Clerk of the City Commission a license so to do."

It will be noted that the ordinances are concerned with "hawkers, peddlers, and hucksters." These terms are stated in the ordinances to be synonymous. Such terms are not synonymous, each having a definite connotation, although each involves a common element, that of sale of a commodity other than at a fixed or established place of business. The ordinances, however, proceed to define the meaning of these terms and apply them to any "person engaged in the business of making retail sales of provisions, goods, wares or merchandise of any description."

In Section 2, the city of Middletown through its council has written a penal law in which the doing of certain acts are designated as a misdemeanor.

The offense so designated is the selling or offering for sale of "fruits, vegetables, meat, poultry, fish, ice, coal, provisions, goods, wares or merchandise of any description," without a permit so to do.

There is therefore a criminal ordinance, and one that is to be construed strictly in favor of one charged with its violation, or possibly more properly stated, one that is to be interpreted strictly against the law maker and in favor of the accused. 37 O. Jur., 744; Hebebrand v. State of Ohio, 129 Oh St 574, 579.

Section 10214 GC, while not directly applicable to penal ordinances of cities does declare the public policy of the state as to prosecutions under penal laws, which affect personal liberty:

"The provisions of part third and all proceedings under it, shall be liberally construed, in order to promote its object, and assist the parties in obtaining justice. The rule of the common law, that statutes in derogation thereof must be strictly construed has no application to such part; but this section shall not be so construed as to require a liberal construction of provisions affecting personal liberty, relating to amercement, or of a penal nature."

**Section 421 in 37 O. Jur., p. 747,** is as follows:

"It has been declared to be a well-established rule of construction that a statute should, if possible, be so construed as to avoid a penalty. Moreover, penal statutes are not to be extended in their operation by inference, implication, or construction beyond the manifest intention of the legislature. They are not to be extended by implication or construction to persons or things not within their descriptive terms, even though such cases appear to be of equal atrocity, or within the reason and spirit of the statute, or within the mischief intended to be avoided. It has been declared that only those transactions are included within penal statutes which are within both their spirit and letter. There is also authority in Ohio to the effect that all doubts in the interpretation of the penal statutes are to be resolved in favor of the accused."

Also, §449, Id., p. 777:

"All words, if they are general and not express or precise, may, in proper cases, be limited, qualified, restricted, or restrained by reference to specific terms with which they are associated, * * * "

See also: **Douglas et v. State, 16 Oh Ap 95.**
**Section 450, in 37 O. Jur., p. 779,** is as follows:

"In accordance with what is commonly known as the rule of ejusdem generis, where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be construed as restricted by the particular designation and as including only things or persons of the same kind, class, or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose. An explanation which has been given for the principle is that if the legislature had meant the general words to be applied without restriction it would have used only one compendious term. In accordance with the rule of ejusdem generis, such terms as 'other,' 'other thing,' 'others,' or 'any other,' when preceded by a specific enumeration, are commonly given a restricted meaning, and limited to articles of the same nature as those previously described."

Applying these rules of construction, which are supported by ample authority, to the problem here presented, the city is put in the position of claiming that books, magazines, newspapers, pamphlets and tracts are included by the words "good, wares, or merchandise of any description."

If only such words had been used, no difficulty would be encountered in concluding that the ordinance was broad enough in scope to include the instant charge. But, no one can claim any reasonable relation between books, magazines, newspapers, pamph-

lets, tracts, and "fruits, vegetables, meat, poultry, fish, ice, coal, provisions."

It is apparent that the ordinance was designed to apply to those last named articles, commonly vended by "hawkers, peddlers, and hucksters."

It would seem that the publishers of newspapers would be quite startled to find their issues classified with fruit, vegetables ice, and coal. That council could have included any article capable of sale in the ordinance cannot be denied. The conclusion, however, is inescapable that mention of particular articles of sale it intended to limit the scope of this penal section to articles similar in nature to those specifically mentioned, and that pamphlets, books, magazines, newspapers and tracts do not come within the purview of the ordinances.

As to the second contention of the city, it is the conclusion of this court that the ordinances come specifically within the purview of laws which are approved both in the majority and dissenting opinions of the recent decisions of the Supreme Court of the United States on this subject. See: Martin v. City of Struthers, Ohio, 63 Supreme Court Reporter, 862, and cases to page 902.

The following is a quotation from the opinion of the court, written by Justice Douglas in the case of Murdock v. Commonwealth of Pennsylvania, 63 Supreme Court Reporter, p. 870, at page 876:

"Jehovah's Witnesses are not 'above the law'. But the present ordinance is not directed to the problems with which the police power of the state is free to deal. It does not cover, and petitioners are not charged with, breaches of the peace. They are pursuing their solicitations peacefully and quietly. Petitioners, moreover, are not charged with or prosecuted for the use of language which is obscene, abusive, or which incites retaliation. Cf. Chaplinsky v. New Hampshire, supra. Nor do we have here, as we did in Cox v. New Hampshire, supra, state regulation of the streets to protect and insure the safety, comfort, or convenience of the public. Furthermore, the present ordinance is not narrowly drawn to safeguard the people of the community in their homes against the evils of solicitations. See Cantwell v. Connecticut, supra, 310 U. S., at 306, 60 S. Ct. at page 904, 84 L. Ed. 1213, 128 A. L. R. 1352. As we have said, it is not merely a registration ordinance calling for an identification of the solicitors so as to give the authorities some basis for investigating strangers coming into the community. And the fee is not a nominal one, imposed as a regulatory measure and calculated to defray the expense of protecting those on the streets and at home against the abuses of solicitors. See Cox v. New Hampshire, supra, 312 U. S. at pages 576, 577, 61 S. Ct. at pages 765, 766, 85 L. Ed. 1049, 133 A. L. R. 1396."

Again, quoting the portion of the opinion to which reference is made by Justice Douglas, on page 873, we find:

"We are concerned, however, in these cases merely with one narrow issue. There is presented for decision no question whatsoever concerning punishment for any alleged unlawful acts during the solicitation. Nor is there involved here any question as to the validity of a registration system for colporteurs and other solicitors. The cases present a single issue—the constitutionality of an ordinance which as construed and applied requires religious colporteurs to pay a license tax as a condition to the pursuit of their activities."

If the language used in the instant ordinances had been specific and definite enough to cover the situation here presented, such ordinances could not be said to come within the scope of those in which the Supreme Court of the United States found vice, but rather within the purview of those enactments directed merely to regulation of public solicitation, providing for a nominal fee commensurate merely with the expense involved in registration and enforcement.

The judgment of the Municipal Court of Middletown is reversed and judgment here entered for the defendant, who is dismissed.

HILDEBRANT and MATTHEWS, JJ., concur.