[Cite as *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 2020-Ohio-1180.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| ERIN G. GABBARD, et al., | : | |
| Appellants, | : | CASE NO. CA2019-03-051 |
| | : | O P I N I O N |
| - vs - | | 3/30/2020 |
| | : | |
| MADISON LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., | : | |
| | : | |
| Appellees. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. 2018-09-2028

Bloomekatz Law, Rachel Bloomekatz, 37 W. Dominion Blvd., Columbus, Ohio 43201 and Everytown Law, Alla Lefkowitz, James E. Miller, 450 Lexington Avenue, P.O. Box 4184, New York, New York 10017, for appellants

Frost Brown Todd LLC, Thomas B. Allen, W. Joseph Scholler, Alexander L. Ewing, Brodi J. Conover, Matthew C. Blickensderfer, 9277 Centre Pointe Drive, Suite 300, West Chester, Ohio 45069, for appellees

Cooper & Elliott, LLC, C. Benjamin Cooper, Sean R. Alto, 2175 Riverside Drive, Columbus, Ohio 43221, urging reversal for amicus curiae Experts in School Safety and Firearms Training

James P. Sean Maloney, 8917 Eagle Ridge Court, West Chester, Ohio 45069 and Law Office of Ronald Lemieux, Inc., Ronald Lemieux, P.O. Box 19183, Cleveland, Ohio 44119, urging affirmance for amicus curiae Buckeye Firearms Foundation, Inc.

Dave Yost, Benjamin M. Flowers, Jason Manion, Shams Hirji, 30 East Broad Street, 17th Floor, Columbus, Ohio 43215, urging affirmance for amicus curiae David A. Yost, Ohio Attorney General

Vorys, Sater, Seymour and Pease LLP, Daniel E. Shuey, 52 East Gay Street, P.O. Box 1008, Columbus, Ohio, 43216, urging reversal for amicus curiae Professor Peter M. Shane

**RINGLAND, J.**

{¶ 1} Appellants, Erin Gabbard and several other parents of students enrolled in the Madison Local School District (collectively, "Gabbard"), appeal from the decision of the Butler County Court of Common Pleas granting summary judgment to Madison Local School District Board of Education and Madison Local School District Superintendent Dr. Lisa Tuttle-Huff (collectively, "Madison Local"). For the reasons stated below, we affirm in part, reverse in part, and remand.

{¶ 2} In the aftermath of a 2016 school shooting at the Madison Junior-Senior High School, Madison Local passed a resolution that allowed it to authorize several Madison Local School District employees to carry concealed firearms into the Madison Local School District's school safety zones.[1] Madison Local claimed authority for this resolution on application of R.C. 2923.122(D)(1)(a), a criminal statute that excludes certain individuals from the offense of possessing a deadly weapon in a school safety zone.

{¶ 3} The persons authorized by Madison Local to carry concealed firearms under this resolution were deemed "approved volunteers" employed by the Madison Local School District who were licensed to carry a concealed firearm in Ohio and who had undergone 24 hours of active shooter/killer training. The authorized employees had also completed and passed a criminal background check, a drug screen, and a mental health evaluation.

{¶ 4} The training requirement passed by Madison Local differs from the

---

1. The resolution passed by Madison Local referred to "deadly weapons" or "dangerous ordnances" rather than firearms. This court will use the term firearm for clarity and ease of discussion.

requirement passed by the General Assembly set forth in R.C. 109.78(D). Pursuant to that provision:

> No public or private educational institution * * * shall employ a person as a special police officer, security guard, or other position in which such person goes armed while on duty, who has not received a certificate of having satisfactorily completed an approved basic peace officer training program, unless the person has completed twenty years of active duty as a peace officer.

{¶ 5} The Ohio Peace Officer Training Commission ("OPOTC") governs basic peace officer training in Ohio. The OPOTC sets rules and approves programs for certified peace officer training. Training takes place at the Ohio Peace Officer Training Academy ("OPOTA") or an approved local police academy. *Martucci v. Akron Civ. Serv. Comm.*, 194 Ohio App.3d 174, 2011-Ohio-1782, ¶ 2 (9th Dist.); R.C. 109.75(A) (allowing the executive director of OPOTC to approve peace officer training schools); R.C. 109.79 (establishing OPOTA). This training requires a minimum of 728 hours of training, divided into units and subunits. Ohio Adm.Code 109:2-1-16. Individuals must also pass a criminal background check, a physical fitness test, and a drug screen. The purpose of OPOTA training is "to provide the student with a strong basic knowledge of the role, function, and practices of a peace officer." *Id.*

{¶ 6} After Madison Local passed the resolution, Gabbard moved for a permanent injunction estopping Madison Local from implementing the resolution unless the employees completed an approved basic peace officer training program in accordance with R.C. 109.78(D). Gabbard also sought the public disclosure of certain court documents that Madison Local had provided to the trial court under seal. This included, among other documents, the mental health evaluations of the Madison Local School District employees authorized to carry concealed weapons in accordance with the resolution passed by Madison Local.

{¶ 7} Following discovery, both Gabbard and Madison Local moved for summary judgment on Gabbard's request for a permanent injunction. In addition, Madison Local moved for a protective order restricting the disclosure of the mental health evaluations. After taking the matter under advisement, the trial court granted Madison Local's request for a protective order. The trial court also granted Madison Local's motion for summary judgment on the Gabbard's request for a permanent injunction of the resolution. Gabbard now appeals, raising two assignments of error for review.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE COURT OF COMMON PLEAS ERRED IN CONCLUDING THAT THE RESOLUTION, WHICH REQUIRES ONLY 24 HOURS OF TRAINING FOR ARMED STAFF, DOES NOT VIOLATE R.C. 109.78(D).

{¶ 10} In the first assignment of error, Gabbard argues the trial court erred by granting summary judgment in favor of Madison Local. We sustain Gabbard's first assignment of error.

{¶ 11} This court reviews summary judgment decisions de novo. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there are no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law and, (3) when all evidence is construed most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St. 3d 367, 369-70 (1998).

{¶ 12} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Robinson v. Cameron*, 12th Dist. Butler No. CA2014-09-191, 2015-Ohio-1486, ¶ 9. Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there

- 4 -

is some genuine issue of material fact yet remaining for the trier of fact to resolve. *Id.* In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Vanderbilt v. Pier 27, L.L.C.*, 12th Dist. Butler No. CA2013-02-029, 2013-Ohio-5205, ¶ 8.

{¶ 13} In construing a statute, the primary goal "is to ascertain and give effect to the intent of the legislature as expressed in the statute." *Stewart v. Vivian*, 12th Dist. Clermont No. CA2015-05-039, 2016-Ohio-2892, ¶ 44. Legislative intent is determined from the plain language of the statute. *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, ¶ 18. "If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545 (1996). However, when a statute is ambiguous, a court must interpret the statute to determine the General Assembly's intent. *Sherwin-Williams Co. v. Dayton Freight Lines, Inc.*, 112 Ohio St.3d 52, 2006-Ohio-6498, ¶ 15. Therefore, when interpreting a statute, the threshold question is whether the statute at issue is ambiguous. *Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-Ohio-8434, ¶ 8.

{¶ 14} This matter does not call upon the court to decide the wisdom of permitting concealed firearms in a school safety zone. Rather, the issue is how much training a teacher or school employee must receive before carrying a firearm into a school safety zone while on duty, a matter that the General Assembly has decided. As noted above, the General Assembly enacted R.C. 109.78(D), which provides:

> No public or private educational institution * * * shall employ a person as a special police officer, security guard, or other position in which such person goes armed while on duty, who has not received a certificate of having satisfactorily completed an approved basic peace officer training program, unless the person has completed twenty years of active duty as a peace officer.

{¶ 15} Despite R.C. 109.78(D), Madison Local maintains that R.C. 2923.122 permits

- 5 -

them to authorize any individual, including its staff, to carry weapons on school property. R.C. 2923.122 prohibits a person from knowingly possessing a deadly weapon or firearm in a school safety zone. The General Assembly crafted several exceptions including, in relevant part:

> any other person who has written authorization from the board of education or governing body of a school to convey deadly weapons or dangerous ordnance into a school safety zone or to possess a deadly weapon or dangerous ordnance in a school safety zone and who conveys or possesses the deadly weapon or dangerous ordnance in accordance with that authorization

R.C. 2923.122(D)(1)(a).

{¶ 16} Following review, we find that R.C. 2923.122 does not provide Madison Local with authority to enact a resolution above the clear and unambiguous dictates of R.C. 109.78(D). Contrary to the trial court's decision, R.C. 109.78(D) and R.C. 2923.122 do not conflict with one another and this court must apply the statutes as written.

{¶ 17} The plain and unambiguous language found in R.C. 109.78(D) makes clear that the Madison Local is prohibited from employing a person as a "special police officer, security guard, *or other position in which such person goes armed while on duty*" unless that person has either completed an approved basic peace officer training program or has 20 years of active duty as a peace officer. While Madison Local asks this court to consider rules of statutory interpretation and find ambiguity in the phrase "other position in which such person goes armed while on duty," we find that such a request would violate this court's duty to apply, not interpret, an unambiguous statute. *Jacobson*, 2016-Ohio-8434 at ¶ 8, citing *Sears v. Weimer*, 143 Ohio St. 312, (1944), paragraph five of the syllabus; *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553 (2000) ("[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation").

- 6 -

{¶ 18} Though the school board may provide written authorization so that an individual is not subject to prosecution under R.C. 2923.122, the school board is still subject to the training requirements mandated by the General Assembly in R.C. 109.78(D) when employing a person as a "special police officer, security guard, or other position in which such person goes armed while on duty."  The express language of the statute does not suggest an intention to allow teachers or staff to carry a firearm while on duty with less training than that indicated in the statute.  Rather, the plain language of the statute reveals that a board of education may only employ such persons if they have received significant training or have more than 20 years of experience.  Madison Local cannot circumvent R.C. 109.78 by relying on R.C. 2923.122, a criminal statute, to implement its resolution.  Should the legislature want to reduce the amount of training or experience for teachers and staff, it is their legislative prerogative to create such an exception.  This court cannot ignore the requirements of R.C. 109.78.

{¶ 19} We are likewise unpersuaded by the designation that the persons authorized to carry concealed firearms under the resolution were "approved volunteers."  The "approved volunteer" designation does not alter the inevitable conclusion that the Madison Local employees are "armed while on duty."  The resulting application is clear.  As the teachers and staff members are employed by Madison Local in a position in which they go into school "armed while on duty," Madison Local was obligated to follow the dictates of R.C. 109.78(D), which mandates the training requirements.  Madison Local cannot unilaterally change the training requirements set forth by the General Assembly.

{¶ 20} We recognize that the parties share an urgent desire to make Madison Local as safe as possible.  Madison Local presents compelling testimony detailing the horror surrounding the school shooting that gave rise to the resolution.  However, the power to create and amend the Ohio Revised Code belongs specifically to the General Assembly.

Ohio Constitution, Article II, Section 1; *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 135, 2000-Ohio-116 (separation of powers is a fundamental feature of our system of constitutional government). The judiciary must accept the limitations upon our constitutional authority and exercise judicial restraint:

> Judges are men and women just like everyone else in society. We are not infallible, but we do have a job to do. But in performing our duties, we should do so fairly and impartially, setting aside our own personal opinions and feelings, and render decisions in accordance with the law as adopted by the General Assembly and not attempt to impose our own personal views of what the law should be, in order to remake and control society in our own personal concept of what society should be.

*Cox v. Franklin Cty. Court of Common Pleas*, 42 Ohio App.3d 171, 176 (10th Dist.1988). It is not the role of the courts "to establish legislative policies or to second-guess the General Assembly's policy choices. 'The General Assembly is responsible for weighing [policy] concerns and making policy decisions.'" *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, ¶ 35, quoting *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, ¶ 212.

{¶ 21} As a result, we find the trial court erred in granting summary judgment in favor of Madison Local. Since the resolution does not comply with the General Assembly's dictates in R.C. 109.78, we find Gabbard's permanent injunction must be granted. Gabbard's first assignment of error is sustained.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ERRED IN GRANTING A PROTECTIVE ORDER OVER THE REDACTED EVALUATIONS AND RELATED TESTIMONY.

{¶ 24} In the second assignment of error, Gabbard argues the trial court erred by granting Madison Local a protective order restricting the public disclosure of the mental health evaluations that were provided to the trial court under seal, excluding names and

any other identifying information, of the Madison Local School District employees who were authorized by Madison Local to carry concealed firearms into the Madison Local School District's school safety zones. We disagree.

{¶ 25} Both Gabbard and Madison Local argue that a de novo standard of review applies. The issue raised in this assignment of error, however, is whether the trial court erred by granting Madison Local a protective order. "We review an order granting or denying a motion for a protective order for an abuse of discretion." *Schmidt v. Krikorian*, 12th Dist. Clermont No. CA2011-05-035, 2012-Ohio-683, ¶ 24.

{¶ 26} The trial court determined that the Health Insurance and Portability and Accountability Act, also known as HIPAA, supported its decision to grant Madison Local's motion for a protective order. Specifically, as the trial court stated:

> Here, provisions of [HIPAA] as codified in CFR 45 §65 FR 8446, support [Madison Local's] position. Unlike a personal injury action or similar tort, the individuals have not granted counsel, the court, [Madison Local], or medical treatment providers permission to access and/or release health information in furtherance of a legal claim. Rather, the individuals granted permission to the providers to share limited, specific information for purposes of an employment decision. That information may not be shared without violating individual [HIPAA] rights.

{¶ 27} Gabbard and Madison Local, however, agree that HIPAA is not applicable to the case at bar. We also agree that HIPAA is not applicable in this case. But a trial court can be right for the wrong reason. *Este Oils Co. v. Federated Ins. Co.*, 132 Ohio App.3d 194, 198 (1st Dist.1999). What is applicable, and what is in dispute, is whether the trial court erred by applying Rule 45(E)(2) of the Ohio Rules of Superintendence when granting Madison Local's motion for a protective order by ordering the parties to submit all depositions, trial exhibits, and other evidence "for public consumption with: 1) all personal identifiers redacted; and 2) all references and testimony as to mental health evaluations redacted." After a full and thorough review of the record, we find no abuse of discretion in

the trial court's decision. The trial court's decision granting Madison Local a protective order restricting the disclosure of these court records to the public was not unreasonable, arbitrary, or unconscionable.

{¶ 28} As noted above, Gabbard sought the public disclosure of certain court documents that Madison Local had provided to the trial court under seal. This included, among other documents, the mental health evaluations of the Madison Local School District employees.

{¶ 29} The Rules of Superintendence provide for public access to court records. *Woyt v. Woyt*, 8th Dist. Cuyahoga Nos. 107312, 107321, and 107322, 2019-Ohio-3758, ¶ 59, citing *State ex rel. Vindicator Printing Co. v. Wolff*, 132 Ohio St.3d 481, 2012-Ohio-3328, ¶ 23. There is a general presumption that court records are publicly accessible. *State ex rel. Harris v. Pureval*, 155 Ohio St.3d 343, 2018-Ohio-4718, ¶ 11 citing Sup.R. 45(A) ("[c]ourt records are presumed open to public access"). However, pursuant to Sup.R. 45(E)(2), there are circumstances in which a court is justified in restricting access to court records to the public. Specifically, as Sup.R. 45(E)(2) states:

> A court shall restrict public access to information in a case document or, if necessary, the entire document, if it finds by clear and convincing evidence that the presumption of allowing public access is outweighed by a higher interest after considering each of the following:
>
> (a) Whether public policy is served by restricting public access;
>
> (b) Whether any state, federal, or common law exempts the document or information from public access;
>
> (c) Whether factors that support restriction of public access exist, including risk of injury to persons, individual privacy rights and interests, proprietary business information, public safety, and fairness of the adjudicatory process.

{¶ 30} Despite Gabbard's argument, in accordance with Sup.R. 45(E)(2), we find the trial court's decision to grant Madison Local a protective order is supported by clear and

convincing evidence that the presumption allowing public access to these court records is outweighed by at least one, if not more, higher interests. These interests include, the individual privacy rights and interests of those Madison Local School District employees. While transparency and accountability are fundamental public interests, we are also cognizant that public disclosure of these sensitive records could reveal the employees' identities. This holds true even where names and other identifying information are excluded.

{¶ 31} We further agree that, although we find that the relevant resolution impermissibly violated R.C. 109.78, the public policy behind arming school district employees would be served by restricting access to the records in order to ensure the anonymity of the employees who were authorized to carry concealed firearms in a school safety zone. Therefore, we find no error in the trial court's decision granting Madison Local a protective order in this case. Accordingly, because we find this to be one of the circumstances in which a court is justified in restricting access to court records to the public under Sup.R. 45(E)(2), Gabbard's second assignment of error is overruled.

{¶ 32} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

HENDRICKSON, P.J., concurs.

S. POWELL, J., concurs in part and dissents in part.

**HENDRICKSON, P.J., concurring separately.**

{¶ 33} I concur in the majority opinion in whole. R.C. 109.78(D) is unambiguous and must be applied as written. The express language found in R.C. 109.78(D) prohibits a public or private school from employing a person as a "special police officer, security guard, *or other position in which such person goes armed while on duty,*" unless that person has

completed an approved basic peace officer training program or has 20 years of active duty as a peace officer. (Emphasis added.) R.C. 109.78(D). I write separately, however, to express my view that even if the dissent were correct in its assertion that the phrase "or other position in which such a person goes armed while on duty" is unclear and ambiguous, I would nonetheless find that Madison Local's authorized armed employees must still meet either the training or the peace officer experience requirements set forth in R.C. 109.78(D) before carrying a firearm into the school's safety zones.

{¶ 34} The dissent applies the principle of ejusdem generis in an attempt to determine the legislative intent behind the phrase "or other position in which such person goes armed while on duty." In doing so, the dissent concludes that the authorized staff carrying firearms in the school are "volunteer school employees" that do not fit into the same category as special police officers and security officers. However, these "voluntary school employees" are hired by the school and go armed while on duty.

{¶ 35} While teachers, administrative staff, or other school employees have volunteered to carry a firearm while in a school safety zone, the undeniable fact is that these individuals have been hired by Madison Local as employees. These employees have been advised by Madison Local of their ability to carry a firearm *while on duty* as follows:

> Please note that this letter authorizes, but does not require, you to possess a firearm *while on duty*. You are granted this authorization as an additional safety measure to protect our students and staff from harm. You must only wield or use the weapon to protect students, staff, and other civilians from deadly harm." (Plaintiffs' Exhibit 10.)

(Emphasis added.) Madison Local's objective is, therefore, for authorized staff to possess a firearm in order to protect students and staff from deadly harm while carrying out the duties they were hired to complete. Thus, the authorized staff, while performing their hired responsibilities, are policing classrooms, hallways, and school facilities in order to

immediately respond to an active shooter incident. In this respect, the authorized staff, while on school property, are performing tasks no different than a hired special police officer or security guard.

{¶ 36} The legislature intended for Madison Local authorized staff to comply with the rigorous training and peace officer experience required by R.C. 109.79 before carrying a firearm into a school safety zone. By requiring more than 700 hours of training or 20 years of peace officer experience, the legislature expressed its clear intent that only individuals of the highest caliber, with significant training and experience, be permitted to carry a firearm on school grounds. Madison Local simply cannot circumvent the legislature's intent by labeling authorized staff as volunteers.

{¶ 37} During oral argument before this court, counsel for Madison Local argued that the legislature could have intended for local school boards to decide the degree of training staff should have, based on local needs, in order for staff to be authorized to carry a firearm on school grounds. This argument, if adopted, would create vast discrepancies among school districts throughout the state as to the extent of training and experience necessary to provide protection to Ohio school children. When enacting laws regarding the amount of training required to become a peace officer, the legislature did not permit localities or individual police departments to determine training requirements based on their respective local needs. Rather, the legislature required standardization and uniformity throughout the state by requiring officers to complete a minimum of 728 hours of OPOTA training. The legislature then required that only those individuals who have completed this standard peace officer training or those individuals who have had 20 years of active duty peace officer experience, be employed by a school and be permitted to be armed while on duty. R.C. 109.78(D). It makes little sense that the legislature would recognize the need to protect students by ensuring that school peace officers and security guards who are armed are

properly trained and experienced, but then allow administrative staff and teachers employed by the school to walk around armed after having only minimal training (in this case, 24 hours) and minimal exposure to active shooter incidents.

{¶ 38}   There is no doubt that the parties in this action care deeply about protecting Madison school children while they are on school grounds.  I applaud Madison Local for trying to take immediate steps to ensure the safety of their students.  However, such immediate steps must comply with the law.  R.C. 109.78(D), as it is currently written, sets forth the parameters that school boards must follow when employing armed individuals in their schools.  This court cannot ignore the requirements of R.C. 109.78.  Should the legislature want to reduce the amount of training or experience employed teachers and staff need to have in order to carry a firearm in a school safety zone, it is in the legislature's hands to do so.

**S. POWELL, J., concurring in part and dissenting in part.**

{¶ 39}   I agree with the majority's resolution of Gabbard's second assignment of error. However, because I find no error in the trial court's decision granting summary judgment to Madison Local upon finding R.C. 109.78(D) did not require Madison Local School District employees who were granted written authorization by Madison Local to carry concealed firearms into the Madison Local School District's school safety zones to complete the same basic training required of Ohio peace officers, I must dissent from the majority's resolution of Gabbard's first assignment of error.  This is because, as discussed more fully below, R.C. 2923.122(D)(1)(a) permits Madison Local to authorize teachers, administrators, and support staff to carry concealed firearms into Madison Local School District's school safety zones without the need for those teachers, administrators, and support staff to comply with the requirements set forth in R.C. 109.78(D).

{¶ 40} As noted by the majority, Gabbard's assignment of error of presents a straightforward question of statutory interpretation regarding the language found in R.C. 109.78(D), which, as noted above, states:

> No public or private educational institution * * * shall employ a person as a special police officer, security guard, or other position in which such person goes armed while on duty, who has not received a certificate of having satisfactorily completed an approved basic peace officer training program, unless the person has completed twenty years of active duty as a peace officer.

{¶ 41} Gabbard argues the language found in R.C. 109.78(D) is plain, unambiguous, and sets forth the General Assembly's clear intent that Madison Local School District employees must complete the same basic training as an Ohio peace officer, or have 20 years of active duty as a peace officer, before Madison Local could authorize them to carry a concealed firearm into the Madison Local School District's school safety zones under R.C. 2923.122(D)(1)(a). Therefore, based on this reading of the statute, Gabbard claims the resolution enacted by Madison Local allowing it to authorize Madison Local School District employees to carry concealed firearms into the Madison Local School District's school safety zones violates R.C. 109.78(D) and cannot be implemented by Madison Local since it permits "school staff to go 'armed while on duty' without peace officer training." I find no merit to Gabbard's claim.

{¶ 42} "Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted." *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 14, citing *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, ¶ 18; *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 20. "To discern legislative intent, we read words and phrases in context and construe them in accordance with rules of grammar and common usage." *Mahoning Edn. Assn. of Dev. Disabilities v. State Emp. Relations Bd.*, 137 Ohio St.3d 257, 2013-Ohio-4654, ¶ 15. This

- 15 -

means that when "'[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation.'" *McConnell v. Dudley*, Slip Opinion No. 2019-Ohio-4740, ¶ 19, quoting *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553 (2000). This is because "'an unambiguous statute is to be applied, not interpreted.'" *Id.*, quoting *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus; *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, ¶ 20.

{¶ 43} I find the plain and unambiguous language found in R.C. 109.78(D) makes clear that the Madison Local School District is prohibited from employing a person as a "special police officer" or "security guard" unless that person has either completed an approved basic peace officer training program or has 20 years of active duty as a peace officer. What is unclear, however, is what the General Assembly meant when it stated that public or private educational institutions are also prohibited from employing persons in "other position[s] in which such person goes armed while on duty" unless those persons had also completed an approved basic peace officer training program or had 20 years of active duty as a peace officer. In my opinion, this creates a question of statutory interpretation as to what the General Assembly intended by including the phrase "or other position in which such person goes armed while on duty" within the otherwise plain and unambiguous language found in R.C. 109.78(D).

{¶ 44} Gabbard claims the phrase "or other position in which such person goes armed while on duty" includes any employee who is employed by a public or private education institution regardless of their assigned job responsibilities so long as that employee has been authorized to carry a firearm while on the job. This, according to Gabbard, would include teachers, administrators, and support staff. Madison Local, on the other hand, claims that phrase should not be read so broadly and must instead be read in

context with the rest of the otherwise plain and unambiguous language found in the statute. This more limited, contextual reading, as Madison Local argues, would necessitate the general term, "other position," being construed to mean a position having similar character to the two specific terms immediately preceding, "special police officer" or "security guard." I agree with Madison Local.

{¶ 45} Where, as here, "specific items in a list are followed by a more general category, a familiar rule of statutory construction, ejusdem generis, says that the more general item is to be construed as of a similar character as the specific items." *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, ¶ 56 (Dewine, J., concurring); *George H. Dingledy Lumber Co. v. Erie R. Co.*, 102 Ohio St. 236, 245 (1921) ("where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase should be held to include only things of the same general nature as those specified"). This "principle 'parallels common usage' in that '[w]hen the initial terms all belong to an obvious and readily identifiable genus, one presumes that the speaker or writer has that category in mind for the entire passage.'" *Id.*, quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012). Therefore, in the absence of a clear legislative manifestation to the contrary, "where the statute enumerates specific subjects or things of a similar nature, kind, or class, followed by general words prefaced by 'or other,' the meaning of the general words ordinarily will be construed as restricted by the specific designations and as including only things of the same nature, kind, or class as those specifically enumerated." *Sells v. Historical Center*, 10th Dist. Franklin No. 82AP-508, 1982 Ohio App. LEXIS 15081, *4 (Nov. 30, 1982), citing *Glidden Co. v. Glander*, 151 Ohio St. 344, 350 (1949).

{¶ 46} "'In accordance with the rule of ejusdem generis, such terms as 'other,' 'other thing,' 'others,' or 'any other,' when preceded by a specific enumeration, are commonly

given a restricted meaning, and limited to articles of the same nature as those previously described.'" *Glidden,* quoting 37 Ohio Jurisprudence, 779, Section 450; *Middletown v. Baker,* 73 Ohio App. 296, 301-302 (12th Dist.1943). Applying this well established principle of statutory construction to the case at bar, I would find the general catchall phrase "or other position in which such person goes armed while on duty" was intended by the General Assembly to be given a restricted meaning so that the general term, "other position," would be construed in a similar vein as the two specific terms listed immediately preceding, "special police officer" and "security guard." Therefore, rather than applying to any employee who is employed by a public or private education institution who may go armed while on duty as Gabbard suggests, I find the language found in R.C. 109.78(D) applies to "special police officers," "security guards," and "other positions" of the same nature, kind, or class. This would include, but would not be limited to, school resource officers and school security officers.

{¶ 47} When taking the phrase "position in which such person goes armed while on duty" in isolation, Gabbard's reading of the statute makes some sense. Teachers, administrators, and support staff who are authorized by Madison Local to carry concealed firearms into the Madison Local School District's school safety zones under R.C. 2923.122(D)(1)(a) are, at least arguably, armed while on duty. However, if that had been the General Assembly's intent, the General Assembly could have easily done so by requiring *any person* employed by a public or private educational institution who goes armed while on duty to complete the basic training required of Ohio peace officers. The General Assembly did not go that far. The General Assembly instead limited that requirement to persons employed as a "special police officer, security guard, or other position in which such person goes armed while on duty[.]" Applying the basic rules of statutory construction, this would include school resource officers and school security officers, but not teachers,

administrators, and support staff.

{¶ 48} The two key words in R.C. 109.78(D) that Gabbard routinely sidesteps are the words "or other."  The General Assembly's use of the words "or other" presents a classic example of when the rule of ejusdem generis applies.  *See Moulton Gas Serv. v. Zaino*, 97 Ohio St.3d 48, 2002-Ohio-5309, ¶ 14 ("[w]hen there is a listing of specific terms followed by a catchall word or phrase which is linked to the specific terms by the word 'other,' and the statute is to be strictly construed, we apply the doctrine of ejusdem generis").  Again, under the rule of ejusdem generis, "where the statute enumerates specific subjects or things of a similar nature, kind, or class, followed by general words prefaced by 'or other,' the meaning of the general words ordinarily will be construed as restricted by the specific designations and as including only things of the same nature, kind, or class as those specifically enumerated."  *Sells*, 1982 Ohio App. LEXIS 15081 at *4, citing *Glidden*, 151 Ohio St. at 350.  This, as noted above, would include school resource officers and school security officers, but not teachers, administrators, and other support staff.

{¶ 49} Just as the majority, I reach this decision irrespective of, and without deference to, my own beliefs as to whether it is sound public policy to permit teachers, administrators, and support staff to carry concealed firearms while fulfilling their chosen profession of teaching and mentoring the students entrusted to them by their parents and guardians.  However, contrary to the majority's decision, I believe the General Assembly, through the passage of R.C. 109.78(D) and 2923.122(D)(1)(a), determined that it was.  So, too, did this state's former Attorney General, who is now serving as this state's Governor, in an opinion letter issued on January 29, 2013.  While it may be persuasive, such an opinion issued by the now sitting Governor is not binding.  *See State ex rel. N. Olmstead Fire Fighters Assn. Local v. N. Olmstead*, 64 Ohio St.3d 530, 533 (1992) (finding the analysis offered by an Attorney General opinion persuasive even though the opinion was not binding

on the court).

{¶ 50} It is not my role as a judge to second-guess the General Assembly's decisions as to what may or may not be sound public policy. My role is instead to interpret and apply the law as written. Adhering to my duty as a jurist, thereby interpreting and applying the law as written, I would hold that the language found in R.C. 109.78(D) did not require Madison Local School District employees who were granted written authorization by Madison Local to carry concealed firearms into the Madison Local School District's school safety zones to complete the same basic training required of Ohio peace officers. Therefore, because it does not violate the language found in R.C. 109.78(D), I would find the resolution passed by Madison Local allowing it to authorize several Madison Local School District employees to carry concealed firearms into the Madison Local School District's school safety zones is valid and enforceable. Accordingly, because I find no merit to any of the arguments raised by Gabbard herein, I must dissent for I would overrule Gabbard's first assignment of error.